UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT MACHEL, YOLANDA SANTILLAN, NASRULLAH MOHAMEDALI and RANDALL PAINTER, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | Case No.: |
| Plaintiffs, | ) ) | CLASS ACTION COMPLAINT |
| v. | ) ) | JURY TRIAL DEMANDED |
| ONTEL PRODUCTS CORP., | ) ) | |
| Defendant. | ) ) ) ) ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Robert Machel, Yolanda Santillan, Nasrullah Mohamedali and Randall Painter (collectively "Plaintiffs"), on behalf of themselves and all persons similarly situated, by and through their attorneys, allege as follows:

## INTRODUCTION

1.      This is a class action brought by Plaintiffs, individually and on behalf of all other similarly situated consumers who purchased the Five Second Fix ("5SF") product manufactured, marketed, distributed, warranted and, in some cases, sold by Ontel Products Corporation ("Ontel" or "Defendant").

2.      Defendant's ubiquitous television and internet advertisements tout 5SF as a premium alternative to conventional household glues and superglues.  According to Defendant, 5SF is "Not a Glue![,]" but a "Super Powered Liquid Plastic Welding Compound" that—with the assistance of a gimmicky UV lamp—"Creates an Everlasting Bond in Just 5 Seconds" that

1

"Permanently Repair[s] Plastic, Metal, Wood, Glass and More[.]" Indeed, Defendant's long-form commercial claims that 5SF is strong enough to permanently repair a torn cable that can then be used to tow a four thousand pound truck.

3.     Defendant's packaging similarly claims that the 5SF works on all materials and, in only seconds, "Creates A Durable, Permanent Bond[.]" Contrary to Defendant's representations, however, 5SF does not work as advertised. Instead, it is little more than an inoperative glue that Defendant markets using gimmicks and false advertising in order to sell the product to unsuspecting consumers at a premium price.

4.     Defendant knew, or should have known, that 5SF is defective, unfit for its ordinary and intended purpose, and incapable of performing as advertised. Moreover, Defendant actively concealed this material fact from Plaintiffs and the members of the Class.

5.     Defendant, despite receipt of thousands of consumer complaints, continues to market and sell 5SF to consumers throughout the United States, causing them millions of dollars in damages.

## PARTIES

### I.   *Plaintiffs*

#### A.  Robert Machel

6.     Plaintiff Robert Machel ("Machel") is a citizen of the state of Ohio and currently resides in New Springfield, Ohio. In or around June 2016, Machel ordered 5SF through Defendant's website for personal, family or household use. Machel paid $19.99, plus $9.95 for shipping and handling, and received two 5SF units. Prior to purchasing 5SF, Plaintiff viewed and relied upon the advertising claims made in Defendant's television infomercials and on its website, all of which were intended by Defendant and its agents to entice consumers to purchase 5SF at a

premium over conventional glues. Machel attempted to use 5SF to repair various types of materials, and applied it in accordance with Defendant's instructions. The 5SF failed to form a durable and permanent bond. Machel subsequently contacted Defendant to seek a refund, but Defendant declined his request and instead offered to sell him additional 5SF at a reduced price. Machel declined Defendant's offer. But for Defendant's myriad misrepresentations and omissions, Machel would not have purchased the 5SF or would have requested a refund immediately after purchase.

### B. Yolanda Santillan

7.      Plaintiff Yolanda Santillan ("Santillan") is a citizen of the state of California and currently resides in Woodland, California. In May 2016, Santillan purchased 5SF for personal, family or household use for approximately $10, exclusive of tax, at a Rite-Aid store in Sacramento, California. Prior to purchasing 5SF, Plaintiff viewed and relied upon the advertising claims made in Defendant's television infomercials, on its website and on the product's packaging, all of which were intended by Defendant and its agents to entice consumers to purchase 5SF at a premium over conventional glues. Santillan attempted to use 5SF to repair various types of materials, and applied it in accordance with Defendant's instructions. The 5SF failed to form a durable and permanent bond. Santillan contacted Defendant to seek a refund, but Defendant failed to respond to her request. But for Defendant's myriad misrepresentations and omissions, Santillan would not have purchased the 5SF or would have requested a refund immediately after purchase.

### C. Nasrullah Mohamedali

8.      Plaintiff Nasrullah Mohamedali ("Mohamedali") is a citizen of the state of Texas and currently resides in Coppell, Texas. In March 2016, Mohamedali purchased 5SF for personal, family or household use for approximately $7.99, exclusive of tax, at Fry's Electronics in Irving,

Texas. Prior to purchasing the 5SF, Plaintiff viewed and relied upon the advertising claims made in Defendant's television infomercials, on its website and on the product's packaging, all of which were intended by Defendant and its agents to entice consumers to purchase 5SF at a premium over conventional glues. Mohamedali attempted to use the 5SF to repair wooden blinds, and applied it to the surface in accordance with Defendant's instructions. The 5SF nevertheless failed to form a durable and permanent bond. Mohamedali contacted Defendant to seek a refund, but Defendant failed to respond to his request. But for Defendant's myriad misrepresentations and omissions, Mohamedali would not have purchased the 5SF or would have requested a refund immediately after purchase.

### D. Randall Painter

9.    Plaintiff Randall Painter ("Painter") is a citizen of the state of Tennessee and currently resides in Cross Plains, Tennessee. In or around May 2016, Painter purchased 5SF for personal, family or household use for approximately $10, exclusive of tax, at a Walmart store in White House, Tennessee. Prior to purchasing 5SF, Plaintiff viewed and relied upon the advertising claims made in Defendant's television infomercials, on its website and on the product's packaging, all of which were intended by Defendant and its agents to entice consumers to purchase 5SF at a premium over conventional glues. Painter attempted to use the 5SF to repair various types of materials, and applied it in accordance with Defendant's instructions. The 5SF failed to form a durable and permanent bond. Painter contacted Defendant to seek a refund, but Defendant failed to respond to his request. But for Defendant's myriad misrepresentations and omissions, Painter would not have purchased the 5SF or would have requested a refund immediately after purchase.

### *Defendant*

10.    Defendant Ontel Products Corporation ("Ontel" or "Defendant") is a New Jersey

4

corporation with its headquarters and principal place of business located at 21 Law Drive in Fairfield, New Jersey.  Defendant is a leading manufacturer and direct marketer of "as seen on TV" consumer products.   Defendant manufactures all its products, including 5SF, and markets and sells them through infomercials, toll-free numbers and proprietary websites, as well as through traditional and online retailers such as Walmart, Rite-Aid, Walgreens, and Amazon, among others.[1]

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.

12.     This Court has personal jurisdiction over Defendant because it has conducted substantial business in this judicial district, and intentionally and purposefully placed 5SF into the stream of commerce within the Northern District of Ohio and throughout the United States.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant transacts business in this district, advertises in this district and has received substantial revenue and profits from its sales of 5SF in this district, including to Plaintiff Machel and other members of the Class; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

## FACTUAL BACKGROUND

### A.  Ontel's Deceptive Marketing Campaign

14.     Since 2015, Defendant has manufactured and marketed 5SF, and, like most direct

---

[1] *See* http://www.ontelproducts.com/about/ (last visited Dec. 22, 2016).

marketers, it sells 5SF via television infomercials, its proprietary website and through various

retailers, including Walmart, Home Depot, Target, Rite-Aid, Walgreens and Amazon.  Upon

information and belief, Defendant has sold tens of millions of dollars' worth of 5SF.

15.     Defendant markets 5SF as a premium and innovative alternative to traditional

household glues and superglues.  Specifically, Defendant represents on the 5SF website

(https://www.5secondfix.com/) that 5SF:

- [Is] Not a Glue! Super Powered Liquid Plastic Welding Compound

- [Is] Fast & Strong! Create an Everlasting Bond in Just 5 Seconds

- Only Cures with UV Light So You Can Position and Reposition Your Repair

- Dries Clear So You Can Fix Anything

- Permanently Repairs Plastic, Metal, Wood, Glass and More

- [Is] Flexible, Sandable, and Paintable — Use 5 Second Fix Everywhere!

- Bonds strong enough to pull a truck!



16.     Defendant's product packaging also makes bold claims concerning the durability

6

and performance properties of 5SF.  Defendant claims 5SF:

- [Is] Great For: Plastic; Metal; Fabric; Wood; Glass; & More!

- [Will] FIX, FILL & SEAL … In seconds!

- Cures With UV Light Fast & Easy!

- Creates A Durable Permanent Bond

- Stops Leaks & Fills Cracks

- [Is] Flexible, Sandable & Paintable

- [Is] Waterproof, Heat Resistant and Dries Clear



17.     Defendant's commercials make similarly false advertising claims, from touting the product's ability to permanently fix any material to being capable of towing a 4,000 pound truck:

> (NARRATOR) When they make instant repairs on the jobsite, they use a welding tool to fix it right.  But you wouldn't try that on a pair of reading glasses at home unless you had 5 Second Fix.  The liquid plastic welding tool that fixes, fills and seals virtually anything in five seconds or less without the mess.  Now that's going to save you money.  5 Second Fix is not a glue, but a super powered liquid plastic welding compound.  Simply apply, weld with the UV light and in as little as five seconds, you have an everlasting repair.  The secret to 5 Second Fix is the super-powered welding compound that cures to a permanent bond with the power of the UV light.  So you always fix it right.  Now you can fix a child's toy and bring back the joy in 5 seconds.  It's perfect for crafters or hobbyists for a permanent repair on the ground or in the air.  Fix flexible cords, small or large, so you always stay charged.  Use it to repair a strap on a leather handbag in five seconds or less.  And here's something you can't do with glue.  WE put 5 Second Fix to the test.  We applied it to the ends of this tow cable to create a bond so strong we pulled this 4,000 lb. truck out of danger.  Now that's amazing.  And because 5 Second Fix only cures with the power of the UV light, you can position and re-position your repair so it perfectly fits there.  Plus, 5 Second Fix is completely sandable and paintable.  Your repair will be like new.  Whether its plastic, wood, metal or glass, let 5 Second Fix repair it fast.  Call or go on-line to get your 5 Second Fix for the special TV discount price of just $19.99.  As a bonus, we'll include the protective carry case free.  But to make this offer really powerful, we're going to double the offer absolutely free.  And here's the best part, we're going to ship your entire order free.  That's right – free shipping.  Call or log on at 5secondfix.com.[2]

18.     Plaintiffs and Class members viewed and relied on Defendant's marketing materials and/or product labels prior to  purchasing 5SF, and believed Defendant's representations regarding the product's durability, strength, longevity and performance properties to be true.

**B.  The 5 Second Fix does not Perform as Advertised**

19.     Contrary to Defendant's representations, however, 5SF is incapable of forming a durable, flexible and permanent bond with any broken surface.  Due to poor manufacturing and/or design, 5SF is little more than an ineffective plastic compound that does not perform as advertised,

---

[2] Transcription of commercial available at https://www.5secondfix.com/ (last visited Dec. 22, 2016).

yet sells at a premium over conventional super glues that provide superior performance.  Simply put, 5SF is unsuited for its intended purpose and does not live up to its baseless marketing claims.

20.    5SF purchasers have attempted to use the product in manners far more conventional than towing a 4,000 pound truck only to learn that Defendant's aggressive marketing claims were false and intended to fool them into buying the product.  A number of internet blogs and other websites publish consumer complaints describing the exact same performance issues as those described herein and suffered by Plaintiffs and the Class.  On Amazon.com, for example, 588 of 1,092 customers reviewing the 5SF, *nearly 54% of all reviewers*, give the product 1 or 2 out of 5 stars and lodge countless complaints including the following, which represent only a small sampling of the hundreds of negative customer reviews:

**... saw this product on TV and thought what a great product.**, March 9, 2016[3]

**This review is from: 5 Second Fix Liquid Plastic Welding Kit - Fix, Repair and Seal Anything in 5 Seconds (Misc.)**

I saw this product on TV and thought what a great product. The hose fitting that pumps air into my Sleep Number Bed broke and the bed went flat. Wow I get to try it out. I found that the end of a pen fit into the 2 broken fittings perfectly so I used a 1/2 inch piece of pen to join the 2 fitting pieces together, like a pipe coupling but on the inside of the fittings. I tired the product out. It didn't work. Maybe because the parts are too opaque. I ended up using super glue. The bed works great again. I will give the product another try when something else breaks, if it works I'll update this review.

_____

**I even got the expensive brand ( yet to leave a review on that one) crazy glue is faster and holds better and longer**, July 31, 2016 [4]

**This review is from: 5 Second Fix Liquid Plastic Welding Kit - Fix, Repair and**

_____

[3] https://www.amazon.com/gp/customer-reviews/R2ARHU0ZF73A0/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B016MB0JF6 (last visited Dec. 22, 2016).

[4] https://www.amazon.com/gp/customer-reviews/R1TFDDT34EB3E3/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B016MB0JF6 (last visited Dec. 22, 2016).

**Seal Anything in 5 Seconds (Misc.)**

I bought more than one because I think I'm doing something wrong but haven't been able to fix nothing, I originally got it for my reading glasses and I have use it in other small broken items and no luck. I even got the expensive brand (yet to leave a review on that one) crazy glue is faster and holds better and longer. The smell is not pleasent either. No way it hold at all what they advertise at all, no way!

---

**I have a 1998 Jeep Grand Cherokee. It has ...**, March 21, 2016[5]

**This review is from: 5 Second Fix Liquid Plastic Welding Kit - Fix, Repair and Seal Anything in 5 Seconds (Misc.)**

I have a 1998 Jeep Grand Cherokee. It has plastic side panels 1 of which had a plastic clip break off! I removed the panel and thoroughly cleaned before mending with this product. I made several passes (just as a welder would do) with the 5 sec magic wand, it should hold, "RIGHT" It's not holding. I don't believe it will hold under outside wind pressure while driving, so I have to say no to this product!

---

**Not a 5 second fix**, September 25, 2016[6]

**This review is from: 5 Second Fix Liquid Plastic Welding Kit - Fix, Repair and Seal Anything in 5 Seconds (Misc.)**

Works just ok, if you plan on never touching the stuff you put together. Not a glue. Again not a glue. Works well with clear objects but not solid colors. And tried on pipe under sink, it holds. not even close to super glue hold

---

**Doesn't work through solid objects. couldn't hold the battery ...**, December 25, 2015[7]

**This review is from: 5 Second Fix Liquid Plastic Welding Kit - Fix, Repair and Seal Anything in 5 Seconds (Misc.)**

---

[5] https://www.amazon.com/gp/customer-reviews/R3VDGJ6HYTBH9K/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B016MB0JF6 (last visited Dec. 22, 2016).

[6] https://www.amazon.com/gp/customer-reviews/R11UPX6F4LF5NF/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B016MB0JF6 (last visited Dec. 22, 2016).

[7] https://www.amazon.com/gp/customer-reviews/R1YSR3Y8JHZMDC/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B016MB0JF6 (last visited Dec. 22, 2016).

Doesn't work through solid objects. couldn't hold the battery door on my remote duetosolidmetaltab
. only edges got hard, broke immediately.

---

**Absolute garbage. The liquid plastic can be wiped clean before ...**, May 2, 2016[8]

**This review is from: 5 Second Fix Liquid Plastic Welding Kit - Fix, Repair and Seal Anything in 5 Seconds (Misc.)**

Absolute garbage. The liquid plastic can be wiped clean before being exposed to the UV light. After exposure to UV light it becomes a sticky mess. The liquid plastic never hardens under the UV light. Complete junk. Save your $$$$. I noticed that this product received a five star rating from 26 percent of reviewers and a one star rating from 50 per cent of reviewers. It seems that if all reviews are truthful then this manufacturer appears to have a quality control problem as they are producing at times a high quality product and at other times they are producing crap. Maybe a few purchasers don't follow directions but I find it difficult to believe that more than half are idiots that can't follow directions. A similar product advertised on TV does not even include a direction and caution sheet.

---

**Junk**, June 11, 2016[9]
**This review is from: 5 Second Fix Liquid Plastic Welding Kit - Fix, Repair and Seal Anything in 5 Seconds (Misc.)**

I tried to use it to repair a defective fingernail. Years ago, the nail on my middle finger had to be surgically removed. It grew back, but the nail is weak and it splits at its upper portion. I am concerned that the nail could again require removal. Also, when the nail splits, it catches on everything. So, I tried a dab of this glue and it says sticky and never hardens no matter how long I illuminate with the light.

For other repairs, it is JUNK. The UV light does not cure the "glue" - it remains sticky and never hardens. I tried the supplier's suggestion of using thin coats and thatdidnotwork.

I went back to Stupid Glue -oops - Super Glue and it does the job - at least on my fingernail !

---

[8] https://www.amazon.com/gp/customer-reviews/R14CBI2FCGKVTM/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B016MB0JF6 (last visited Dec. 22, 2016).

[9] https://www.amazon.com/gp/customer-reviews/RNCPXKLTYP0LR/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B016MB0JF6 (last visited Dec . 22, 2016).

**Limited applications. Packaging defective.**, April 27, 2016[10]

**This review is from: 5 Second Fix Liquid Plastic Welding Kit - Fix, Repair and Seal Anything in 5 Seconds (Misc.)**

Stay away from this. First of all, It arrived broken, with leakage of the glue. The "uv" light worked only if the switch was held in one akward position. It would go on and off randomly. So how does the glue work? Not well. I tried to use it to repair a broken plastic picture frame. It failed. Had to wipe it all off and use krazy glue. It seems that when a repair surface is thick, the uv activation light will not penetrate deep enough to harden the glue. So if you have applications that have the glue exposed to the surface, the light will reach it and harden the glue. Very limited applications! Maybe good for crafts.

**This product does not work.**, March 15, 2016 [11]

**This review is from: 5 Second Fix Liquid Plastic Welding Kit - Fix, Repair and Seal Anything in 5 Seconds (Misc.)**

I watched the infomercial and have a pair of sunglasses with a broken handle and thought this would work to repair them. I opened the product, which has a strong odor and tried to use the nozzle to dispense the product. The nozzle tip did not work and the product started to leak. I had to screw open the product to apply the glue and then used the light to "cure" the seal. It did not seal after I made 5 attempts. I then tried to use this to repair a chipped vase and the product would not seal after using the light to "cure" the seal. This product did not work at all, and was a messy, smelly experience. I would not purchase this item again.

21.     Consumer complaints regarding the 5SF on the Walmart website are strikingly similar, with 18 of 32 reviews (well over half) giving the product 1 out of 5 stars, and consistently noting issues concerning the product's longevity and performance.

22.     Defendant was, and is, under a continuing duty to disclose the defective nature

---

[10] https://www.amazon.com/gp/customer-reviews/R2PFSQJV5B48KJ/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B016MB0JF6 (last visited Dec. 22, 2016).
[11] https://www.amazon.com/gp/customer-reviews/R3EBOB71UJ7RJ4/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B016MB0JF6 (last visited Dec. 22, 2016).

of 5SF to consumers, but instead continues to fraudulently market the product.  Defendant also frequently tells complaining customers that they simply have misused or misapplied the 5SF, and it generally offers those requesting a refund only equally defective replacement product, often at an additional cost, in an effort to actively conceal the product's inherently defective nature.  But Amazon reviews for Bondic—a competitive offering that is marketed in much the same way as 5SF, and that is applied and cured in an identical fashion—demonstrate that 5SF's problem lies not in the manner in which consumers use and apply the product, but in its very manufacture or design.  84% of Amazon reviews for Bondic gave the product 3-5 stars, with 54% of reviewers giving it 5-stars.[12]  Bondic's runaway success suggests that Plaintiffs and Class members did not misuse 5SF, but rather that 5SF simply is incapable of performing as advertised.

23.     Defendant's fraudulent, deceptive and unfair practices have caused, and continue to cause, Plaintiffs and Class members significant out-of-pocket loss in the amount of the price paid for this defective product.

## **CLASS ACTION ALLEGATIONS**

24.     This action is brought on behalf of Plaintiffs, individually and as a class action, pursuant to FED. R. CIV. P. 23(a), 23(b)(2) and/or 23(b)(3) on behalf of a nationwide class of consumers.  Specifically, the nationwide class consists of:

> All persons in the United States who purchased the "5 Second Fix" (the "Nationwide Class" or "Class").

Excluded from the Nationwide Class are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, assigns and successors.  Also excluded are the judge to whom this case is assigned

---

[12] https://www.amazon.com/Bondic-Better-Anything-Seconds-Situations/dp/B00UAH19FS/ref=sr_1_cc_2?s=aps&srs=13642605011&ie=UTF8&qid=1482435815&sr=8-2-catcorr&keywords=bondic (last visited Dec. 22, 2016).

and any member of the judge's immediate family.

25.     In the alternative to the Nationwide Class, and pursuant to FED. R. CIV. P. 23(c)(5), Plaintiffs seek to represent the following state subclasses (collectively, the "State Classes"):

- All persons in Ohio who purchased the "5 Second Fix" (the "Ohio Class").

- All persons in California who purchased the "5 Second Fix" (the "California Class").

- All persons in Texas who purchased the "5 Second Fix" (the "Texas Class).

- All persons in Tennessee who purchased the "5 Second Fix" (the "Tennessee Class").

Excluded from the Ohio, California, Texas and Tennessee Classes are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

26.     This action has been brought and may be properly maintained as a class action for the following reasons:

a.  <u>Numerosity</u>:  Members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe that  the proposed Class contains at least thousands of members.  Upon information and belief, Defendant marketed and sold the 5SF to tens, if not hundreds, of thousands of consumers throughout the United States.  The Class is therefore sufficiently numerous to make joinder impracticable, if not impossible.  The precise number of Class members is unknown to Plaintiffs.

14

b.  <u>Existence and Predominance of Common Questions of Fact and Law</u>:  Common

questions of law and fact exist as to all members of the Class.  These questions

predominate over any questions affecting individual Class members.  These

common legal and factual questions include, but are not limited to, the

following:

   i.  whether 5SF does not work as advertised and is defective;

   ii.  whether Defendant knew that 5SF does not perform as advertised;

   iii.  whether Defendant intentionally concealed or failed to disclose to

   Plaintiffs and the Class the inherently defective nature of 5SF;

   iv.  whether Defendant had a duty to Plaintiffs and the Class to disclose

   that 5SF cannot perform as advertised, and whether Defendant

   breached that duty;

   v.  whether a reasonable consumer would consider the defective nature of

   5SF to be material in deciding to purchase the product;

   vi.  whether Defendant's advertising claims give rise to actionable express

   warranties;

   vii.  whether Defendant breached its express and implied warranties by

   selling a defective product and refusing to refund Plaintiffs and Class

   members all funds paid;

   viii.  the appropriate nature of class-wide equitable relief; and

   ix.  the appropriate measurement of restitution and/or measure of damages

   to award to Plaintiffs and Class members.

These and other questions of law or fact common to the members of the Class predominate over

15

any questions affecting only individual Class members.

     c.  <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the Class since Plaintiffs purchased 5SF designed, manufactured, and marketed by Defendant, as did each member of the Class.  Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries arising out of Defendant's wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent class members.

     d.  <u>Adequacy</u>:  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class they seek to represent;  they have retained counsel competent and highly experienced in complex class action litigation; and they intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

     e.  <u>Superiority</u>:  A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation required by Defendant's conduct.  It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation would substantially increase the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device

presents far fewer management difficulties, and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court.

    f.   Defendant has acted, and refused to act, on grounds generally applicable to the

Class, thereby making appropriate final injunctive relief with respect to the class as

a whole.

### VIOLATIONS ALLEGED

### COUNT I
### VIOLATIONS OF THE OHIO CONSUMER SALES PACTICES ACT ("CSPA")
### (*Ohio Rev. Code § 1345.01, et seq.*)
### (On Behalf of the Ohio Class)

27.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as

though fully set forth herein.

28.    Plaintiff Machel ("Plaintiff" for purposes of this Count) brings this claim on behalf

of himself and the Ohio Class.

29.    Defendant's conduct involves consumer transactions as defined in O.R.C. §

1345.01(A).

30.    Defendant is a supplier as defined by O.R.C. § 1345.01(C).

31.    Machel is a consumer as defined by O.R.C. § 1345.01(D).

32.    Defendant violated the CSPA by engaging in the following practices proscribed by

the following subsections of O.R.C. § 1345.02:

    (A) "commit[ting] an unfair or deceptive act or practice in connection with
    a consumer transaction";

    (B)(1) representing that 5SF has "performance characteristics . . . uses, or
    benefits that [they] do [not] have";

    (B)(2) representing that 5SF is "of a particular standard, quality, grade, style
    [or] prescription" when they are not;

(B)(4) representing that 5SF is "available to the consumer for a reason that does not exist";

(B)(5) representing that 5SF is being "supplied in  accordance with  a previous  representation," when they are not; and

(B)(8) representing "[t]hat [5SF has] a specific price advantage [when it does] not."

33.    Defendant further violated the CSPA by engaging in the following practices proscribed by O.R.C. § 1345.03:

(A) "an unconscionable act or practice in connection with a consumer transaction";

(B)(2) "kn[owledge] at the time the consumer transaction was entered into that [5SF's] price was substantially in excess of the price at which similar property  or services were  readily  obtainable  in  similar  consumer transactions by like consumers";

(B)(3) "kn[owledge] at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction"; and

(B)(6) "knowingly ma[king] a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment."

34.    Defendant's brand of false, unfair, deceptive, and unconscionable acts have previously  been declared to be false, unfair, deceptive, or unconscionable by the Ohio Attorney General, who has made the following materials, among  others, publicly available for inspection, which materials declare actions similar to Defendant's to be unfair, deceptive, and unconscionable:

- *In the matter of Gateway Distributors, Ltd.,* June 14, 2006, Attorney General Public Inspection File Number 10002461 (company "shall not make any express or implied statements in the offer or sale of [its] products that have capacity, tendency or effect of deceiving or misleading consumers or that fail to state any material fact, the omission of which deceives or tends to deceive consumers).

- *In re MillerCoors*, December 23, 2008, Attorney General Public Inspection  File  Number  10002740  (company  agrees  to  stop

18

manufacturing, marketing, and providing unsafe product until product is reformulated);

- *Ohio v Purdue Pharma, Inc.,* May 08, 2007, Franklin County Case Number 07-CVH-05-6195, Attorney General Public Inspection File Number 10002558 (company prohibited from making misleading statements regarding the use of its product);

- *Ohio v. The Dannon Co., Inc.,* December 22, 2010, Franklin County Case Number 10-CVH-12-18225, Attorney General Public Inspection File number 10002917 (along with $21 million payment, company enjoined from making any express or implied claims about certain characteristics of its product)

- *Ohio v. GlaxoSmithKline, LLC,* June 23, 2011, Lucas County Case Number CI-2011-3928, Attorney General Public Inspection File Number 10002956 (along with paying $40.75 million, company shall not make any writer or oral claim for the products that is false, misleading or deceptive or represent that the products have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities, or qualities that products do not have, or cause likelihood or confusion or misunderstanding as to products' source, sponsorship, or certification);

- *In re Warner-Lambert Company, LLC*, May 13, 2014, Attorney General Public Inspection File Number 10002243 (company agrees, inter alia, not to make false, misleading, or deceptive oral or written claims about its product)

35. It is also a deceptive act or practice for purposes of the CSPA if a supplier makes representations, claims, or assertions of fact in the absence of a reasonable basis in fact, as Ohio Admin. Code § 109:4-3-10(A) expressly prohibits suppliers from making:

> any representations, claims or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims or assertions of fact.

36.     Defendant had ample prior notice that when selling goods it is a false, unfair, deceptive, and unconscionable act or practice to misrepresent their quality, make misleading statements concerning them, misrepresent their uses, and place inaccurate   advertisements regarding their descriptions for sale.

37.     Accordingly, Defendant also had prior notice that if it engaged in the foregoing false, unfair, deceptive, and unconscionable labelling and other related acts, the CSPA would require it to make full restitution and reimbursement to their injured purchasers.

38.     In conjunction with the violations of O.R.C. § 1345.02 set forth above,  Defendant violated O.A.C. § 109:4-3-10 because, in connection with a consumer transaction,  Defendant made written representations, claims, or assertions of fact that caused reasonable   consumers to believe their statements were true when at the time Defendant made these   representations, claims, or assertions it neither possessed nor relied upon reasonable bases in   fact, such as factual, objective, quantifiable, clinical or scientific data, or other competent and reliable evidence, to substantiate their representations, claims, or assertions of fact.

39.     The foregoing O.A.C. provision provided Defendant additional notice that its   acts were false, unfair, deceptive, and unconscionable in violation of the CSPA.

40.     Defendant's CSPA violations directly and proximately caused damage to Plaintiff and Ohio Class members.  Had Defendant refrained from the unlawful conduct described above, Plaintiff and the Class would not have purchased 5SF, would have requested a refund immediately after purchase or would have paid less for the product.

41.     According to O.R.C. § 1345.09(A), Plaintiff and Ohio Class members are entitled to  rescind their consumer transactions or to recover their actual damages.

42.     According to O.R.C. § 1345.09(F)(2), Plaintiff and Ohio Class members are entitled to their attorneys' fees since Defendant knowingly committed an act or practice that violates the CSPA.

43.     According to O.R.C. § 1345.09(E), this Complaint will be served upon the Ohio Attorney General, Michael DeWine.

**COUNT II**
**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**(CAL. BUS. & PROF. CODE § 1750, *et seq.*)**
**(On Behalf of the California Class)**

44.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

45.     Plaintiff Santillan ("Plaintiff" for purposes of this Count) brings this claim on behalf of herself and the California Class, and seeks equitable and monetary relief pursuant to the Consumer Legal Remedies Act, CAL. CIV. CODE §§ 1750 *et seq*. ("CLRA").

46.     California Civil Code § 1770(a)(5) specifically prohibits representing that goods "have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."  Section 1770(a)(7) further prohibits representing that goods "are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Section 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

47.     Defendant has violated the CLRA by representing that 5SF has characteristics that it does not have and that it is of a particular quality when it is of another, and by advertising 5SF with the intent not to sell the product as advertised.  Specifically, Defendant represented and advertised that 5SF is a flexible "Super Powered Liquid Plastic Welding Compound" that "Create[s] an Everlasting Bond in Just 5 Seconds . . . Dries Clear So You Can Fix Anything," and

21

allows consumers to "Permanently Repair Plastic, Metal, Wood, Glass and More[.]"  In fact, 5SF does not and cannot perform as advertised, and is unfit for its ordinary and intended use.

48.     Defendant also was and is under a duty to Plaintiff and the Class to disclose the defects plaguing 5SF because:

      a.  Defendant was and is in a superior position to know the true state of facts about the various defects plaguing 5SF;

      b.  Plaintiff and the Class could not reasonably have been expected to learn or discover that 5SF suffers from significant design and/or manufacturing defects until they purchased and attempted to use the product; and

      c.  Defendant actively concealed these defects by offering Plaintiff and Class Members similarly defective replacement products in lieu of a full refund.

49.     In failing to disclose that 5SF is inherently defective and unsuited for its intended use, Defendant has and continues to knowingly and intentionally conceal material facts and breach its duty not to do so.

50.     Defendant also engaged in deceptive conduct by providing Plaintiffs and Class members with similarly defective replacement product in lieu of a refund.  Defendant's scheme of active concealment allowed it to unlawfully retain the proceeds of its scheme.

51.     The facts affirmatively misrepresented and/or concealed or not disclosed by Defendant to Plaintiff and the Class are material in that a reasonable consumer would have considered them important in deciding whether to purchase 5SF.

52.     Plaintiff and the California Class Members reasonably relied upon those material misrepresentations.

53.     Under California Civil Code § 1780(a), Plaintiff and members of the Class seek injunctive and equitable relief for Defendant's violations of the CLRA.

54.     On October 21, 2016, Plaintiffs' counsel sent a letter to Defendant by certified mail,

return receipt requested, that contained notice of Defendant's violations of the CLRA and a demand for relief. Although well over 30 days have passed since Defendant received the letter, it has not remedied its CLRA violations.

55.     Plaintiff and Class Members have suffered damages, including losing money or property, as a direct and proximate result of Defendant's CLRA violations.  Had Defendant refrained from its myriad misrepresentations and omissions, Plaintiff and the Class would not have purchased the 5SF, would have requested a refund immediately after purchase or would have paid less for the product.  Plaintiff's and the other California Class members' money damages were proximately caused by Defendant's fraudulent and deceptive business practices.

56.     Plaintiff and the Class therefore also request this Court enter such orders or judgments necessary to restore to any person any money acquired with such unfair business practices, and for such other relief, including attorneys' fees and costs, as provided in Civil Code § 1780 and the Prayer for Relief.

## COUNT III
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, *et seq.*)
### (On Behalf of the California Class)

57.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

58.     Plaintiff Santillan ("Plaintiff" for purposes of this Count) brings this claim on behalf of herself and the California Class.

59.      Defendant has engaged in unfair competition and unfair, unlawful and/or fraudulent business practices by the conduct, statements, and omissions described above, including by misrepresenting the performance properties of 5SF, and by knowingly and intentionally

concealing from Plaintiff and the Class that 5SF does not work as advertised and is unsuited for its ordinary and intended purpose.

60.     These acts and practices are fraudulent because they have deceived Plaintiff and the Class and are likely to deceive the public.  In making myriad material affirmative misrepresentations and failing to disclose and/or suppressing other material facts from Plaintiff and Class members, Defendant violated the UCL and caused injuries to Plaintiff and the Class. Defendant's misrepresentations, omissions and acts of concealment pertained to information that was material to Plaintiff and Class members, as it would have been to all reasonable consumers.

61.     The injuries suffered by Plaintiff and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class members should have reasonably avoided.  Therefore Defendant also engaged in unfair practices.

62.     Defendant's acts and practices also are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, California Business & Professions Code §17500, and California Commercial Code § 2313.

63.     Plaintiff seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendant, to obtain restitution and disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business and Professions Code § 17200.

**COUNT IV**
**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**
**(CAL. BUS. & PROF. CODE § 17500, *et seq.*)**
**(On Behalf of the California Class)**

64.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

65.     Plaintiff Santillan ("Plaintiff" for purposes of this Count) brings this claim on behalf of herself and the California Class.

66.     California Business and Professions Code § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

67.     Defendant caused to be made or disseminated throughout California and the United States, through advertising materials, product packaging and the 5secondfix.com website, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and the other California Class members.

68.     Defendant has violated California Business and Professions Code § 17500 because the misrepresentations and omissions regarding 5SF as set forth in this Complaint were material and likely to deceive a reasonable consumer.

69.     Plaintiff and the other California Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices.  In purchasing 5SF, Plaintiff and the other California Class members relied on the misrepresentations and/or omissions of Defendant with respect to 5SF, representations and omissions that they subsequently learned were false.

70.     Had Defendant refrained from its myriad misrepresentations and omissions, Plaintiff and the Class would not have purchased 5SF, would have requested a refund immediately after purchase or would have paid less for the product.  Accordingly, Plaintiff and the other California Class members did not receive the benefit of their bargain.

71.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.  Defendant's misconduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

72.     Plaintiff, both individually and on behalf of the other California Class members, requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other California Class members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**COUNT V**
**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT**
**FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(CAL. CIV. CODE §§ 1791.1, 1792)**
**(On Behalf of the California Class)**

73.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

74.     Plaintiff Santillan ("Plaintiff" for purposes of this Count) brings this claim on behalf of herself and the California Class.

75.     Plaintiff and the other California Class members who purchased 5SF in California are "buyers" within the meaning of California Civil Code § 1791(b).

76.     5SF is a "consumer good[ ]" within the meaning of California Civil Code § 1791(a).

77.     Defendant is a "manufacturer" of 5SF within the meaning of California Civil Code § 1791(j).

78.     Defendant impliedly warranted to Plaintiff and the other California Class members that 5SF was "merchantable" within the meaning of California Civil Code §§ 1791.1(a) & 1792. California Civil Code § 1791.1(a) states:

> 'Implied warranty of merchantability' or 'implied warranty that goods are merchantable' means that the consumer goods meet each of the following:
>
> (1)     Pass without objection in the trade under the contract description.
>
> (2)     Are fit for the ordinary purposes for which such goods are used.
>
> (3)     Are adequately contained, packaged, and labeled.
>
> (4)     Conform to the promises or affirmations of fact made on the container or label.

79.     5SF would not pass without objection in the trade under the contract description because it is defective and therefore unfit for its ordinary and intended purpose as a plastic compound capable of creating a "permanent" and "everlasting" bond between any two materials.

80.     5SF is not adequately contained, packaged and labeled because the product containers, packaging and labels represent that 5SF is a flexbile "Super Powered Liquid Plastic Welding Compound" that "Create[s] an Everlasting Bond in Just 5 Seconds . . . Dries Clear So You Can Fix Anything," and allows consumers to "Permanently Repair Plastic, Metal, Wood, Glass and More" when, in fact, 5SF does not and cannot perform as advertised and is unfit for its ordinary and intended use.

81.     For those same reasons, 5SF does not conform to the promises or affirmations of fact made on its container or labels.

82. Defendant's actions, as complained of herein, thus breached the implied warranty of merchantability in violation of California Civil Code §§ 1792 and 1791.1.

83. Pursuant to California Civil Code §§ 1791.1(d) & 1794, Plaintiff and the other California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of 5SF or the overpayment or diminution in value thereof, as well as costs and attorneys' fees.

**COUNT VI**
**VIOLATION OF THE TEXAS DECEPTIVE TRADE**
**PRACTICES AND CONSUMER PROTECTION ACT**
**(TEX. BUS. & COM. CODE § 17.41, *et seq.*)**
**(On Behalf of the Texas Class)**

84. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

85. Plaintiff Mohamedali ("Plaintiff" for purposes of this Count) brings this claim on behalf of himself and the Texas Class.

86. The Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA"), Texas Business and Commerce Code § 17.41, *et seq.* makes unlawful any "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

87. Defendant's misrepresentations and material omissions regarding the defective nature of 5SF constitute false, misleading, and deceptive acts or practices in violation of the DTPA.

88. Defendant's false, misleading, and deceptive acts and omissions took place in the course of trade or commerce.

89. Defendant intended for Plaintiff and the Texas Class to rely on its false, misleading, and deceptive acts and omissions when they purchased 5SF.

90.     A causal relationship exists between Defendant's unlawful conduct and the ascertainable losses suffered by Plaintiff and the Texas Class.  Had Defendant refrained from its myriad misrepresentations and omissions, Plaintiff and the Class would not have purchased 5SF, would have requested a refund immediately after purchase or would have paid less for the product.  These injuries are of the type the DTPA was designed to prevent, and are the direct and proximate result of Defendant's false statements and omissions.

**COUNT VII**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class or, Alternatively, Each of the State Classes)**

91.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

92.     Plaintiffs bring this count on behalf of themselves and the members of the Class.

93.     Defendant's packaging expressly warrants that 5SF works with "Plastic; Metal; Fabric; Wood; Glass; & More[,]" is "[f]lexible," will "FIX, FILL & SEAL … In seconds[,]" and "Cures With UV Light Fast & Easy [to] Create[ ] A Durable Permanent Bond" that "Stops Leaks & Fills Cracks[.]"

94.     Defendant's website and commercials similarly warrant that 5SF is a "Super Powered Liquid Plastic Welding Compound" that works "Fast & Strong [to] Create an Everlasting Bond in Just 5 Seconds" that is "strong enough to pull a truck!"  Defendant's advertisements further claim that 5SF is "Flexible," "Dries Clear So You Can Fix Anything" and "Permanently Repair[s] Plastic, Metal, Wood, Glass and More!"

95.     These promises became part of the basis of the bargain between the parties and created collective express warranties that 5SF would conform to Defendant's affirmations and promises.

96.     Defendant breached its express warranties by supplying 5SF in a condition that does not satisfy warranty obligations and by failing to compensate Plaintiffs for damages caused by the Products.

97.     Plaintiffs and members of the Class notified Defendant of the breach within a reasonable time, and/or were not required to do so because affording Defendant a reasonable opportunity to cure its breach of written warranty would have been futile.  Defendant also knows of the defect and yet has chosen to conceal it and to fail to comply with itswarranty obligations.

98.     As a direct result of Defendant' breach, Plaintiffs and the Class bought 5SF and they otherwise would not have, and did not receive the benefit of their bargain.  Plaintiffs have therefore suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial.

**COUNT VIII**
**BREACH OF THE IMPLIED WARRANTY OF**
**MERCHANTABILITY**
**(On Behalf of the Nationwide Class or, Alternatively, Each of the State Classes)**

99.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

100.     Plaintiffs bring this count on behalf of themselves and the  members of the Class.

101.     At all times mentioned herein, Defendant manufactured and sold 5SF, and impliedly warranted to that 5SF was of merchantable quality when it is in fact unfit for its ordinary and intended use.

102.     As a direct and proximate result of the breach of said warranties, Plaintiffs and the members of the Class suffered and will continue to suffer losses as alleged herein.

103.     To the extent any Plaintiff or Class member is required to establish privity in order to state a claim for breach of the implied warranty, Plaintiffs and class members are intended third-

party beneficiaries of contracts, including express warranties, between Defendant and its dealers, franchisees, representatives and agents. On information and belief, Defendant's authorized dealers, franchisees, representatives, and agents purchased 5SF from Defendant pursuant to valid and enforceable agreements.  Because Plaintiffs and Class members—rather than Defendant's authorized dealers, franchisees, representatives, and agents—were the intended end users of 5SF, Plaintiffs and Class members were the intended (and not incidental) third party beneficiaries of the agreements entered into among Defendant and its authorized dealers, franchisees, representatives, and agents, and any warranties, express or implied, flowing therefrom.  Indeed, Defendant's authorized dealers, franchisees, representatives, and agents did not and would not purchase 5SF for personal use, therefore the implied warranties flowing to them actually are intended to protect their customers from the losses Defendant's 5SF product has caused and will continue to cause them.  Accordingly, Defendant is estopped from limiting claims for common law and statutory violations based on a defense of lack of privity.

### COUNT IX
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
#### (15 U.S.C. § 2301 *et seq.*,)
#### (on behalf of the Nationwide Class or, alternatively, the State Subclasses)

104.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

105.    Plaintiffs bring this count on behalf of themselves and the members of the Class.

106.    Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, in response to widespread consumer complaints regarding misleading and deceptive warranties. The Act imposes civil liability on any "warrantor" for failing to comply with any obligation under written and implied warranties. 15 U.S.C. § 2310(d)(1).

107.    5SF is a "consumer product," as defined by § 2301(1).

31

108.     Plaintiffs, the Nationwide Class, and the State Subclass members are "consumers" as defined by § 2301(3).

109.     Defendant is a "warrantor[ ]" and "supplier[ ]" as defined by §§ 2301(4) and (5).

110.     Defendant has failed to remedy the defects plaguing the 5SF, yet continues to market and sell the product as described herein.

111.     Defendant's packaging expressly warrants that 5SF works with "Plastic; Metal; Fabric; Wood; Glass; & More[,]" is "[f]lexible," will "FIX, FILL & SEAL … In seconds[,]" and "Cures With UV Light Fast & Easy [to] Create[ ] A Durable Permanent Bond" that "Stops Leaks & Fills Cracks[.]"

112.     Defendant's website and commercials similarly warrant that 5SF is "Super Powered Liquid Plastic Welding Compound" that works "Fast & Strong [to] Create an Everlasting Bond in Just 5 Seconds" that is "strong enough to pull a truck!"  Defendant's advertisements further claim that 5SF is "Flexible," "Dries Clear So You Can Fix Anything" and "Permanently Repair[s] Plastic, Metal, Wood, Glass and More!"

113.     At the time Defendant issued written warranties covering 5SF, Defendant knew and had notice that 5SF does not, and cannot, perform as advertised. Defendant's continued misrepresentations and omissions concerning 5SF are "[u]nfair methods of competition in or affecting commerce, and [are] unfair or deceptive acts or practices in or affecting commerce." Accordingly, Defendant's behavior is unlawful under 15 U.S.C. §§ 2310(b), 45(a)(1).

114.     Plaintiffs seek to recover damages caused as a direct result of Defendant's breach of its written and implied warranties, and its deceitful and unlawful conduct. Damages include monies paid for 5SF.

115.     The Act also provides for "other legal and equitable" relief. 15 U.S.C. §

2310(d)(1). Accordingly, Plaintiffs seek to enjoin Defendant from acting unlawfully as alleged, including but not limited to ceasing its fraudulent and deceptive marketing campaign and actively discouraging Plaintiffs from seeking all remedies available under the law.

116.     The Act also provides for an award of costs and expenses, including attorneys' fees, to prevailing consumers in the Court's discretion. 15 U.S.C. § 2310(d)(2). Plaintiffs intend to seek such an award as prevailing consumers at the conclusion of this case.

## COUNT X
### UNJUST ENRICHMENT / COMMON LAW CLAIM FOR RESTITUTION
### (On Behalf of the Nationwide Class or, Alternatively, Each of the State Classes)

117.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

118.     Plaintiffs bring this count on behalf of themselves and the members of the Class.

119.     Because of its wrongful acts and omissions, Defendant charged a higher price for 5SF than its true value and obtained monies which rightfully belong to Plaintiffs and the Class.

120.     Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members. It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

121.     Plaintiffs, therefore, seek an order requiring Defendant to make restitution to them and other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray, on behalf of themselves and members of the Class, that this Court:

A.     determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure,

and issue order certifying the Class or Classes as defined above;

B.      award all actual, general, special, incidental, statutory, punitive and consequential damages to which Plaintiffs and Class members are entitled;

C.      award pre-judgment and post-judgment interest on such monetary relief;

D.      grant appropriate injunctive relief and/or declaratory relief as the Court may deem reasonable; and

E.      award reasonable attorneys' fees and costs; and grant such further and other relief that this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs, on behalf of themselves and the putative class, demand a trial by jury on all issues so triable.

Dated:  December 29, 2016                     Respectfully submitted,

*/s/ Daniel R. Karon*
Daniel R. Karon (#0069394)
Beau D. Hollowell (#0080704)
**KARON LLC**
700 West St. Clair Ave., Ste. 200
Cleveland, OH 44113
Phone: 216.999.7576
Fax: 216.241.8175
Email: dkaron@karonllc.com
bhollowell@karonllc.com

Bryan L. Clobes                                   Daniel O. Herrera
**CAFFERTY CLOBES**                        **CAFFERTY CLOBES MERIWETHER &**
**MERIWETHER & SPRENGEL LLP**       **SPRENGEL LLP**
1101 Market Street                               150 S. Wacker Dr.
Philadelphia, PA 19107                          Suite 3000
Phone: (215) 864-2800                          Chicago, Illinois 60606
Facsimile: (215) 864-2810                      Telephone: (312)782-4880
Email: bclobes@caffertyclobes.com       Facsimile: (312)782-7785
                                                        Email: dherrera@caffertyclobes.com

                                                        *Counsel for Plaintiffs and the Class*